# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

DALTON LAX,

      Plaintiff,

            v.                                    CASE NO. 18-3201-SAC

CORIZON MEDICAL STAFF,
et al.,

      Defendants.

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment for Failure to Exhaust (Doc. 34). The motion is ripe for decision as Plaintiff has failed to file a timely response. Defendants' motion is granted for the reasons stated herein.

## I.    Procedural History

Plaintiff Dalton Lax brings this pro se civil rights action under 42 U.S.C. § 1983. Although Plaintiff is currently housed at the El Dorado Correctional Facility in El Dorado, Kansas, the events giving rise to his Complaint occurred during his confinement at the Shawnee County Jail in Topeka, Kansas. Plaintiff alleges that while housed at the Shawnee County Jail he received inadequate medical care for his critical eye condition.

The Court dismissed this action on October 17, 2018, for failure to exhaust administrative remedies. (Docs. 7, 8.) On appeal, the Tenth Circuit Court of Appeals found that Plaintiff's failure to answer the question on the form complaint about exhaustion did not make it clear that Plaintiff did not exhaust his claim, and although Plaintiff was given an opportunity to address the issue by responding to the Court's order to show cause, the Court did not acquire any additional information from the Defendants to ensure that administrative remedies were available to Plaintiff. (Doc. 16,

at 5.) Therefore, the Tenth Circuit vacated this Court's dismissal and remanded for further proceedings. *Id*. at 6.

On August 7, 2019, Defendants filed a Motion for Summary Judgment for Failure to Exhaust (Doc. 34). As required by Local Rule 56.1(f), Defendants provided Plaintiff, who is proceeding pro se, with the required notice regarding motions for summary judgment. (Doc. 36.) The notice was mailed to Plaintiff's address of record. (Doc. 36, at 3.) Plaintiff's response deadline was August 28, 2019. *See* D. Kan. Rule 6.1(d)(2) ("Responses to . . . motions for summary judgment . . . must be filed and served within 21 days."). To date, Plaintiff has not filed a response to the motion for summary judgment. Therefore, because Plaintiff has failed to timely file a response, Defendants' statement of facts set forth in the Memorandum in Support (Doc. 35) are deemed admitted. *See* D. Kan. Rule 56.1(a) ("All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."); Fed. R. Civ. P. 56(c)(1) and (e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . ."); D. Kan. Rule 7.4.

## II. Uncontroverted Facts

1. Plaintiff, Dalton Lax, Kansas Department of Corrections ("KDOC") No. 94030, SNDOC No. 54014, is a 29-year old inmate currently confined by the KDOC after convictions for a variety of offenses, including attempted murder in the first degree, aggravated battery, criminal discharge of a firearm, and criminal possession of a weapon. Plaintiff was confined at Shawnee County Jail from August 26, 2016, until September 25, 2018, at which time he was transferred to El Dorado Correctional Facility after sentencing on the above convictions. (*Martinez* Report, Exhibit 2, Phelps Aff., ¶ 14, Doc. 29-2).

2. On December 6, 2018, Plaintiff was transferred to Hutchinson Correctional Facility. On June 26, 2019, he was transferred back to El Dorado Correctional Facility where he is currently incarcerated. Plaintiff's earliest release date for his present convictions is November 22, 2055. (*Martinez* Report, Exhibit 1, KASPER results, Doc. 29-1).

3. Defendant Shawnee County Jail (Shawnee County Department of Corrections, Adult Detention Center) is located in Topeka, Kansas. Neither Shawnee County Jail nor its staff has authority to direct or provide medical treatment to inmates. (*Martinez* Report, Ex. 2, Phelps Aff., ¶¶ 2, 6, Doc. 29-2).

4. Defendant Corizon Health Inc. is under contract to provide medical services to inmates incarcerated at Shawnee County Jail. (*Id.*, ¶ 3).

5. Major Timothy Phelps is Deputy Director of the Shawnee County Department of Corrections. Maj. Phelps is responsible for reviewing and maintaining inmate grievances at Shawnee County Jail. (*Id.*).

6. All inmates at Shawnee County Jail are given a copy of the Inmate Handbook at intake. The Grievance Procedures and the medical services process are noted in the Inmate Handbook. (*Id.*, ¶ 5).

7. Inmates at Shawnee County Jail receive a medical and mental health screening upon arrival. It is the inmate's responsibility upon arrival to inform the medical staff of any medical issues or any medications the inmate has been prescribed or of any special treatments or special diets the inmate should be receiving. It is the inmate's responsibility to notify the medical staff of any medical needs he or she may have while incarcerated at Shawnee County Jail by submitting an Inmate Medical Request Form. Medical Request forms may be obtained from jail staff and when completed are placed by the inmate in a secure Medical Request Box. Medical Request

forms are collected by medical staff on a daily basis and, upon evaluation, if necessary, the inmate may be taken to the medical module for examination, if necessary, or be scheduled for the appropriate clinic to address specific medical needs. (*Id*., ¶ 6).

8. The Shawnee County Jail has established an offender grievance process by which inmates may complain of issues related to their conditions of confinement, including those related to inadequate medical care. (*Id*., ¶ 7, *see also* the Shawnee County Department of Corrections' Inmate Handbook, Ex. A to Phelps Aff., pp. 18, 50-51, Doc. 29-2).

9. As an inmate incarcerated at Shawnee County Jail, the Offender Grievance Process was made available to Dalton Lax (KDOC #94030, SNDOC #54014). An inmate at the Shawnee County Jail has the right to use the grievance procedure for the expression and resolution of any problems related to his or her confinement with guarantees against reprisals. The inmate has the responsibility to use the grievance process in a positive and productive manner to ensure problem resolution and avoid frivolous claims. (*Martinez* Report, Ex. 2, Phelps Aff., ¶ 8; Ex. A, Inmate Handbook, p. 2, Doc. 29-2).

10. When initiating the grievance process, the inmate must first attempt to resolve a complaint or problem at the lowest level possible with the appropriate staff member in an attempt to informally resolve the complaint. (*Martinez* Report, Ex. 2, Phelps Aff., ¶ 9; Ex. A, Inmate Handbook, p.50, Doc. 29-2).

11. The inmate may file a formal grievance after he or she has attempted to resolve the complaint or problem through an informal grievance to appropriate staff. The formal grievance shall be filed within ten (10) calendar days from discovery of the event giving rise to the grievance and submitted on an Inmate Grievance Form. (*Martinez* Report, Ex. 2, Phelps Aff., ¶ 10; Ex. A,

Inmate Handbook, p.50; *see also* Shawnee County Department of Corrections' Inmate Grievance Form, Exhibit B to Phelps Aff., Doc. 29-2).

12. The Grievance Form must provide specific information concerning the reason for the grievance including names of staff involved, a specific description of the complaint, and the action requested by the inmate to resolve the complaint. The formal Grievance Form should be placed in the outgoing mailbox in the inmate's module where it will be directed to the appropriate division manager. The division manager shall respond to the grievance within ten (10) business days of receipt of the grievance. If the inmate is not satisfied with the grievance response, he or she may forward the grievance to the Deputy Director within three (3) days of the division manager's response. The Deputy Director shall respond to the grievance in writing within ten (10) business days of receipt. The Deputy Director's decision is the final step in the grievance process. (*Martinez* Report Ex. 2, Phelps Aff., ¶ 11; Ex. A, Inmate Handbook, p.51, Doc. 29-2).

13. It is the inmate's responsibility to notify the medical staff at Shawnee County Jail of any medical needs the inmate may have by submitting a Medical Request Form. If an inmate believes his medical needs are not being met after submitting a Medical Request Form, he shall attempt to resolve the situation by submitting an Inmate Request to Staff form to the Director of Nursing. If he is not satisfied with the response, he may submit an Inmate Request to Staff form to the Health Services Administrator. If that does not resolve the situation, the inmate may submit a written grievance to the Deputy Director over Adult Detention and Legal. The grievance process is separate from the request for medical care process. The submission of a Medical Request Form or an Inmate Request to Staff Form requesting medical care are not a substitute for the filing of a grievance. (*Martinez* Report Ex. 2, Phelps Aff., ¶ 12; Ex. A, Inmate Handbook, pp. 18-19, Doc. 29-2).

14. In the event an inmate asserts that he is unable to participate in the grievance process due to a disability, correctional staff will, upon request by the inmate, assist the inmate by reading the grievance process to the inmate, drafting grievance forms as dictated by the inmate, and/or assisting the inmate in preparing the grievance form. (*Martinez* Report, Ex. 2, Phelps Aff., ¶ 13, Doc. 29-2).

15. Maj. Phelps searched the record for any grievances filed by Plaintiff and found that Plaintiff has not filed any grievances regarding any of the events alleged in his lawsuit while he was incarcerated at Shawnee County Jail during the time period of August 26, 2016 through September 25, 2018. (*Id.*, ¶ 15).

16. While he was incarcerated at Shawnee County Jail between August 26, 2016 and September 25, 2018, Plaintiff submitted over ninety Request to Staff forms related to a variety of issues including temperature in his cell, the television station he preferred to watch, telephone calls, and visits with the attorney in his criminal case. (*Id.*, ¶ 15, *see also*, Lax Medical Records, pp. 509-602, *Martinez* Report, Ex. 4, Doc.29-4 (under seal)). Plaintiff did not pursue any of these informal staff complaints through the grievance process. (*Martinez* Report, Ex. 2, Phelps Aff., ¶ 15, Doc. 29-2).

17. Plaintiff submitted multiple Medical Request Forms for a variety of medical complaints. (*Martinez* Report, Exhibit 3, Davies Aff., ¶¶ 10-12, 13, 16-18, 20-24, 30, Doc. 29-3, 29-4 (under seal at Doc. 30)).

18. Plaintiff's Intake and Receiving Screening form reflects that he acknowledges that he received a copy of the Inmate Handbook containing the grievance policy and that the grievance process was explained to him on August 26, 2016 and again on September 13, 2016. (*Martinez*

Report, Ex. 2, Phelps Aff., ¶ 16; *see also*, Intake and Receiving Screening forms and health assessment form, Exhibit C to Phelps Aff., Doc. 29-2).

19. Plaintiff's claims in this action relate solely to Plaintiff's allegations that Defendants failed to provide him with adequate medical care for an eye condition while he was incarcerated at Shawnee County Jail from August 26, 2016 through the date of the filing of his lawsuit on August 9, 2018. (*See* Complaint, pp. 2-5, Doc. 1). The grievance process was available to Plaintiff while he was incarcerated at Shawnee County Jail. Plaintiff did not file any grievances related to the issues that are the subject of his lawsuit. Plaintiff did not exhaust his available administrative remedies as to his claims against Defendants before he filed the instant suit.

## III. Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) and (c). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law" and is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). The Court views all evidence and draws all reasonable inferences in the light most favorable to the party opposing summary judgment. *Pinkerton v. Colorado Dep't. of Transp.*, 563 F.3d 1052, 1058 (10th Cir. 2009) (citation omitted). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986)).

## IV. Analysis

An inmate is required by the Prison Litigation Reform Act ("PLRA") to exhaust all

available prison administrative remedies before filing a complaint in federal court. Section 1997e(a) expressly provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (stating that under the PLRA "a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court") (citations omitted). "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (citation omitted); *see also Jones v. Bock*, 549 U.S. 199, 219 (2007) (stating that "the benefits of exhaustion include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record") (citations omitted).

This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it." *Beaudry v. Corrections Corp. of Am.*, 331 F.3d 1164, 1167 n. 5 (10th Cir. 2003), *cert. denied*, 540 U.S. 1118 (2004); *Little*, 607 F.3d at 1249. A prison or prison system's regulations define the steps a prisoner must take to properly exhaust administrative remedies and a prisoner "may only exhaust by properly following all of the steps laid out" therein. *Little*, 607 F.3d at 1249 (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the] PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). "The level of detail necessary in a grievance to comply

with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

In a suit governed by the PLRA, failure to exhaust is an affirmative defense and the defendant has the burden of proof regarding exhaustion of administrative remedies. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). The issue of Plaintiff's failure to exhaust his available administrative remedies prior to filing his lawsuit must be determined before reaching the merits of his lawsuit. *Little*, 607 F.3d at 1249 ("unexhausted claims cannot be brought in court") (citation omitted); *see also Jernigan*, 304 F.3d at 1032 (an inmate who does not complete the grievance process is barred from pursuing a §1983 claim).

The undisputed evidence shows that Plaintiff failed to exhaust his administrative remedies regarding the allegations in his lawsuit that the Defendants failed to provide him with adequate medical care for his eye condition. Shawnee County Jail has an offender grievance process by which inmates may complain of issues related to their conditions of confinement, including those related to inadequate medical care. (*Martinez* Report, Ex. 2, Phelps Aff., ¶¶ 5, 7, Doc. 29-2). This grievance process was admittedly made available to Plaintiff. (*Id.*, ¶¶ 8, 16). However, Plaintiff did not pursue any grievance regarding the claims in his lawsuit regarding medical care for his eye condition before filing his lawsuit. (*Id.*, ¶ 14).

Although Plaintiff acknowledges that he was informed of the grievance policy at Shawnee County Jail on more than one occasion (*Id.*, ¶ 16, Doc. 29-2; *see also*, Intake and Receiving Screening forms and health assessment form, Exhibit C to Phelps Aff., Doc. 29-2), he did not initiate the grievance process, much less complete it, with regard to his complaints regarding medical treatment for his eye condition that are the subject of his lawsuit. (*Martinez* Report, Ex. 2,

Phelps Aff. ¶ 14, Doc. 29-2). Plaintiff submitted Medical Request Forms (the process by which an inmate requests medical evaluation or care) for a variety of medical complaints while he was incarcerated at Shawnee County Jail. (*Martinez* Report, Ex. 3, Davies Aff., ¶¶ 10-12, 13,16-18, 20-24, 30, Doc. 29-3, filed under seal at Doc. 30). He also submitted over ninety requests to staff concerning a variety of complaints including temperature in his cell, the television station he preferred to watch, telephone calls, and visits with the attorney in his criminal case. (*Martinez* Report, Ex. 2, Phelps Aff., ¶ 15, Doc. 29-2). However, Plaintiff did not pursue any of these complaints regarding his conditions of confinement, including his medical care, through the grievance process. (*Id.*, ¶¶ 15, 16).

Under the PLRA "a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court." *Little*, 607 F.3d at 1249 (citations omitted). Accordingly, Plaintiff's Complaint should be dismissed without prejudice.

**V.     Conclusion**

Defendants are entitled to summary judgment in their favor because Plaintiff failed to exhaust his available administrative remedies prior to filing suit. The case is dismissed without prejudice.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion for Summary Judgment for Failure to Exhaust (Doc. 34) is **granted.**

**IT IS FURTHER ORDERED** that this case is **dismissed without prejudice.**

**IT IS SO ORDERED**.

**Dated in Topeka, Kansas, on this 17th day of September, 2019.**

<u>s/ Sam A. Crow</u>
**Sam A. Crow**
**U.S. Senior District Judge**